ATTORNEY FOR APPELLANT
Michael E. Caudill
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Kelly A. Miklos
Deputy Attorney General
Indianapolis, Indiana

_____

# In the
# Indiana Supreme Court

_____

No. 49S02-0701-JV-3

J.D.,                                                                    *Appellant (Respondent below),*

v.

STATE OF INDIANA,                                          *Appellee (Petitioner below).*

_____

Appeal from the Marion Superior Court, Juvenile Division, No. 49D09-0502-JD-540
The Honorable Marilyn A. Moores, Judge
The Honorable Beth Jansen, Magistrate

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 49A02-0506-JV-575

_____

January 5, 2007

**Dickson, Justice**.

In appealing the trial court judgment adjudicating her to be a delinquent child for committing disorderly conduct, a class B misdemeanor when committed by an adult,[1] J.D. asserts that her conduct was an exercise of free speech protected by the Indiana Constitution, that the trial court should not have admitted evidence of her statements, which were made without

_____

[1] *See* Ind. Code §§ 31-37-1-2, 35-45-1-3.

<u>Miranda</u> warnings, and that the trial court's dispositional order was excessively harsh. Concluding that J.D. was engaged in protected political speech, the Court of Appeals reversed. <u>J.D. v. State</u>, 841 N.E.2d 204, 209-10 (Ind. Ct. App. 2006). We grant transfer and affirm the trial court.

As a seventeen-year-old resident of the Marion County Guardian's Home ("the Home"), J.D. experienced problems with the Home's house parent. Marion County Deputy Sheriff Sherry Gibbons—who also worked onsite at the Home, generally to maintain order and enforce rules—discussed the matter with J.D. briefly in the dining room of the Home, and then, for privacy, moved the discussion to her office. Though the officer was investigating complaints that J.D. and other residents had intimidated the house parent, Deputy Gibbons testified that she did not approach the discussion with J.D. intending to make an arrest. Instead, the officer sought to find a "solution to this situation and try to work toward a behavior that was . . . good for everybody." Tr. at 11. Deputy Gibbons described arrest in situations like this as "the last resort." *Id*. at 13.

The efforts of Deputy Gibbons to have a conversation with J.D. proved unsuccessful, as louder interruptions from J.D. met each of the officer's attempts to speak to her. The officer described the volume of the J.D.'s voice as "breaking on the eardrums," and said that J.D. responded to requests to stop hollering by stating that she "did not have to respect no one or nobody that didn't respect her." *Id*. at 12. J.D., on the other hand, testified that she did not raise her voice but just attempted to explain her objection to having been once written up by the house parent and regarding other occasions where the house parent promoted facility rules. Nevertheless, after continued attempts to discuss J.D.'s behavior and to explain the potential consequences of it, the officer advised J.D. that she would be arrested for intimidation and for disorderly conduct if she did not stop hollering. J.D. replied that she did not care, and she continued to talk over Deputy Gibbons, who then arrested J.D.

The State filed a petition alleging J.D. was a delinquent child, and the Marion County Juvenile Court subsequently adjudicated her to be a delinquent for commission of disorderly conduct, a class B misdemeanor if committed by an adult.[2] The court ordered guardianship of J.D.

---

[2] The intimidation charge, a class D felony when committed by an adult, appeared on the Probation Officers Report of Preliminary Inquiry and Investigation dated February 1, 2005, *see* Appellant's Ap-

2

to the Department of Correction but suspended her commitment, releasing her into the custody of her half-sister.

J.D. brought this appeal, challenging her adjudication as a delinquent, claiming: (1) insufficient evidence because her behavior leading to the disorderly conduct charge was an exercise of her freedom of expression protected by Indiana Constitution Article 1, § 9; (2) erroneous admission of Deputy Gibbons's testimony regarding J.D.'s statements made without the constitutionally required waiver of her rights to remain silent and to be assisted by counsel; and (3) an abuse of trial court discretion by ordering a suspended commitment to the Department of Correction.

**Sufficiency of Evidence**

J.D. first contends that, because her expressions to Deputy Gibbons were protected political speech under Article 1, Section 9, of the Indiana Constitution,[3] as applied in Price v. State, 622 N.E.2d 954 (Ind. 1993), there was insufficient evidence to support the trial court's adjudication that she was a delinquent child. The State asserts that J.D.'s speaking was not constitutionally protected political expression and that her manner of speaking was an abuse of the right of free speech, emphasizing that the right of free speech protected in Section 9 is expressly qualified by the phrase "but for the abuse of that right, every person shall be responsible."

In Price, the defendant loudly, and with profanity, objected first to the arrest of another person, and then objected to a police threat to arrest her for her protest. She was charged with two counts of obstructing or interfering with a law enforcement officer by force, public intoxication, and disorderly conduct. After a bench trial, she was acquitted on the interfering counts but convicted of public intoxication and disorderly conduct. We reversed the disorderly conduct conviction, finding that her noisy protest about the police officer's conduct toward another person constituted political speech, that any harm suffered by others did not rise "above the level of

---

p'x. at 13, but it was excluded from the charging information filed with the court on February 2, 2005, *see id*. at 12.

[3] Article 1, Section 9, of the Indiana Constitution provides: "No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible."

a fleeting annoyance," and that, given the large number of officers and civilians assembled and the level of the commotion before Price's arrival, "the link between her expression and any harm that was suffered" was not established.  Price, 622 N.E.2d at 964.

The present case is distinguishable from Price, where the defendant's speech did not obstruct or interfere with the police.  Here, J.D.'s alleged political speech consisted of persistent loud yelling over and obscuring of Deputy Gibbons's attempts to speak and function as a law enforcement officer.  Because it obstructed and interfered with Deputy Gibbons, J.D.'s alleged political speech clearly amounted to an abuse of the right to free speech and thus subjected her to accountability under Section 9.

Because we find that J.D.'s abusive speech is not analogous to the relatively harmless speech in Price, and that her loud over-talking of the officer was not constitutionally-protected speech, we reject the claim of insufficient evidence.

**Admission of Deputy's Testimony**

J.D. also contends that the trial court erred by admitting the testimony from Deputy Gibbons regarding her "interrogation" of J.D.  Appellant's Br. at 1, 5, 12, 17.  J.D. argues that her statements to the officer were made during a custodial interrogation and that J.D. was not advised of her rights to remain silent and to have counsel present nor did she knowingly and voluntarily waive those rights.

In Miranda v. Arizona, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602 (1966), the United States Supreme Court instructs: "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id*. at 444, 16 L.Ed.2d at 706, 86 S.Ct. at 1612.  These "procedural safeguards" include advisement of the right to remain silent, that any statement made may be used against the person, and of the right to the presence of an attorney. *Id*. at 444, 16 L.Ed.2d at 706-07, 86 S.Ct. at 1612.  The purpose of the issuance of Miranda warnings is to secure the constitutional privilege against self-

4

incrimination by providing procedural safeguards to be employed during questioning initiated by officers focusing on a person suspected of wrongdoing. *Id*. at 444, 16 L.Ed.2d at 706, 86 S.Ct. at 1612. "[W]ithout proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Id*. at 467, 16 L. Ed.2d at 719, 86 S. Ct. at 1624. But <u>Miranda</u> recognizes that "[a]ny statement given freely and voluntarily without any compelling influences is . . . admissible in evidence." *Id.* at 478, 16 L.Ed.2d at 726, 86 S.Ct. at 1630.

In this case, Deputy Gibbons approached J.D. in the dining room of the Home, where the juvenile resided. The officer asked J.D. to accompany her into her office. Once in the office, the officer shut the door and began an informal discussion with J.D. regarding her recent confrontations with the house parent. The officer described this approach as her normal course under the circumstances, an arrest of a resident being the last resort. What took place was far less intrusive than the "[g]eneral on-the-scene questioning . . . or other general questioning of citizens in the fact-finding process" left unaffected by the <u>Miranda</u> holding. *Id*. at 477-78, 16 L.Ed.2d at 725, 86 S.Ct. at 1629. The trial court aptly described the circumstances: "what started out as an informal discussion to perhaps smooth over some problems . . . just flat out got out of hand." Tr. at 25.

J.D.'s statements made during her meeting with Deputy Gibbons were not received in evidence as an admission to prove J.D.'s *prior* wrongful conduct. The present charges do not refer to a previous incident but rather to the nature and manner of the juvenile's behavior while she was making her statements. The content of J.D.'s shouting was not relevant to establish the charged act of delinquency. Furthermore, she voluntarily engaged in the conduct that included these statements. The trial court did not err in admitting testimony describing the manner and extent of J.D.'s refusal to engage in a discussion with Deputy Gibbons and her continued voluntary shouting after the officer requested that she stop.

We decline to find error in the trial court's admission of testimony from Deputy Gibbons describing J.D.'s conduct and statements.

**Dispositional Determination**

J.D. contends that the trial court's final disposition amounted to an abuse of discretion. The dispositional order committed J.D. to the Indiana Department of Correction, but suspended the commitment and placed her on probation subject to her compliance with the Marion County Office of Family and Children caseplan. J.D. argues that this disposition was inconsistent with a less restrictive alternative that had been recommended by the Probation Department, and that it contravened statutory principles.

Prior to the dispositional hearing, the trial court's Probation Department submitted an "Addendum Report" dated May 18, 2005, supplementing its initial February 1, 2005, "Report of Preliminary Inquiry and Investigation." Appellant's App'x. at 13, 30. The Addendum Report concluded by recommending that J.D. be placed on "Formal Probation," that she "[p]articipate in and successfully complete the caseplan as arranged for by the Marion County Office of Family and Children," and that she pay all court fees. *Id*. at 34. The trial court followed the recommendation except that, before ordering probation, it first committed J.D. to the Indiana Department of Correction for housing in correctional facility for children, and then suspended the commitment, placed her on probation, and released her to the physical custody of her half-sister. *Id.* at 10.

Indiana Code section 31-37-18-6 provides:

If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
    (1) is:
        (A) in the least restrictive (most family like) and most appropriate setting available; and
        (B) close to the parents' home, consistent with the best interest and special needs of the child;
    (2) least interferes with family autonomy;
    (3) is least disruptive of family life;
    (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
    (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

In its dispositional decree, the trial court expressly noted that J.D. had a "prior history of delinquent activity." Appellant's App'x. at 9. Her prior history included criminal mischief, battery (twice), and criminal recklessness. She had previously been placed on formal probation for two months, and twice on suspended commitment, once for five months and another time for four months. *Id.* at 31. In its remarks made at the conclusion of the dispositional hearing, the trial court stated:

> A suspended commitment to Girl School, . . . , you've been down that road once before. We have tried a number of services with you, and yet somehow we have failed to the extent that when an adult tells you shut up, you don't shut up. So we need to continue to stress to you that when you are told to do certain things, you do them, because on that date, I think you failed miserably.

Tr. at 29.

Under the statute, placement in "the least restrictive (most family like) and most appropriate setting available" applies only "[i]f consistent with the safety of the community and the best interest of the child." I.C. § 31-37-18-6. In view of J.D.'s prior history of delinquent behavior and her failure to adequately respond to prior attempts at rehabilitation, the disposition ordered by the trial court is quite consistent with her best interest and the safety of the community. We find no abuse of discretion.

## Conclusion

We grant transfer and affirm the trial court's dispositional order in this case.

Shepard, C.J., and Sullivan, Boehm, and Rucker, JJ., concur.

7