## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 20 2017, 9:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nancy A. McCaslin
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| M.D., <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | November 20, 2017 <br><br> Court of Appeals Case No. 20A03-1706-JV-1399 <br><br> Appeal from the Elkhart Circuit Court <br><br> The Honorable Deborah A. Domine, Magistrate <br><br> The Honorable Michael A. Christofeno, Judge <br><br> Trial Court Cause No. 20C01-1605-JD-225 |

**Brown, Judge.**

[1] M.D. appeals the juvenile court's order awarding wardship of M.D. to the Department of Correction ("DOC"). M.D. raises two issues which we revise and restate as:

I. Whether the juvenile court had jurisdiction; and

II. Whether the juvenile court abused its discretion in awarding wardship of M.D. to the DOC.

We affirm.

## Facts and Procedural History

[2] On May 23, 2016, the State filed a Formal Delinquency Petition under cause number 20C01-1603-JD-225 ("Cause No. 225") alleging M.D. to be a delinquent child in that he had committed acts that if committed by an adult would constitute: Count I, burglary as a level 4 felony; Count II, burglary as a level 4 felony; Count III, intimidation as a level 6 felony; Count IV, resisting law enforcement as a class A misdemeanor; and Count V, resisting law enforcement as a class A misdemeanor. On June 29, 2016, the court entered an order approving the filing of the delinquency petition and found that M.D. was currently at the DOC.

[3] On December 8, 2016, the court held an initial hearing and stated:

> This is Cause No. 1601-JD-8, . . . ; [Cause No. 225], . . . . These two cases are set for an initial hearing. I will also point out [M.D.] was sent to DOC under 1510-JD-379. I did not resume jurisdiction in this case. If need be, we can address it. I did not resume jurisdiction because there are two other pending cases,

and it seems to me for efficiency's sake that it would better, simply, to start fresh and move forward from here.

Transcript Volume II at 4. The court then reviewed M.D.'s rights with him. Under cause number 1601-JD-8 ("Cause No. 8"), M.D. admitted that he went into a home without permission in September 2015, took some keys, and eventually took a vehicle that was located at that residence. Under Cause No. 225, M.D. admitted to the allegations in Counts I and II regarding burglary relating to acts occurring in March 2016 and in Count IV of resisting law enforcement. The court ordered that M.D. be placed and remain in the Juvenile Detention Center and scheduled a hearing for December 9, 2016, to address the setting of an evidentiary hearing for Counts III and V.

[4] On December 9, 2016, the court held a hearing, referenced Cause No. 8 and Cause No. 225, and stated: "We've got to do it within 60 days if he's out. We've got to do it within 20 days if he's in." *Id.* at 27. After some discussion, the court suggested January 20th, and M.D.'s counsel stated: "I don't have an objection to – to the trial being moved, especially if there – if there is a chance he would be out of custody, then I am fine with a January 20th date." *Id.* at 29. That same day, the court entered a dispositional order placing M.D. on probation supervision, releasing him from the Juvenile Detention Center and placing him on electronic monitoring, and ordering that he participate in individual and family therapy and case management, submit to random drug screens, participate in the Victim Offender Reconciliation Program, and enroll in an educational program within forty-eight hours.

[5]     On January 23, 2017, Samuel Ludwig, the Approving Supervisor of Elkhart County Juvenile Community Corrections, filed a memorandum with the court indicating that M.D. had been on electronic monitoring for forty-five days and had done well and requesting that he be released from electronic monitoring effective January 23, 2017. On January 26, 2017, the court granted the request and ordered that M.D. be released from electronic monitoring effective January 23, 2017.

[6]     On February 22, 2017, the court held a hearing in Cause Nos. 8 and 225. It reviewed M.D.'s rights, and M.D. admitted to Counts III and V under Cause No. 225. On March 17, 2017, the court ordered him to participate in the Victim Offender Reconciliation Program and scheduled a review hearing on April 11, 2017.

[7]     On March 27, 2017, the probation officer filed a modification report alleging that M.D. failed to report to probation on March 17th and 21st, that M.D.'s mother reported that he left her home without her permission, and that Elkhart Schools reported that he was not doing his required school work hours. On April 11, 2017, the court held a hearing, and on April 18, 2017, it entered an order effective April 11, 2017, finding that responsibility for the placement and care of M.D. was ordered or continued to be ordered to the probation department of Elkhart County. The court also ordered that M.D. be placed on electronic monitoring, that he spend thirty hours a week in the classroom, and that he attend credit recovery through Keys Counseling. A review hearing was scheduled for May 18, 2017.

[8]     On May 10, 2017, the probation officer filed a modification report indicating that, since being placed on electronic monitoring again on April 11, 2017, M.D. had violated the rules on numerous occasions including testing positive for marijuana on April 25, 2017, and being outside without permission on multiple dates. The report recommended that he be found in violation of probation and be made a ward of the DOC due to his continued violation of electronic monitoring and positive drug screen. On May 18, 2017, the court held a hearing and stated: "[W]hen kids come in here and ask me to give them a chance, my hope – and I think everybody's hope – is that they're going to succeed. But when all we come in here for is modification and violations, and even your mom has expressed concerns, can't keep giving you a chance." Transcript Volume II at 132-133. The court found that it was in M.D.'s best interest to be removed from the home because his behaviors were contrary to his interests and those of the community, made him a ward of the DOC, and ordered him committed to the Logansport Juvenile Facility.

## *Discussion*

### I.

[9]     The first issue is whether the juvenile court had jurisdiction. M.D. argues that the juvenile court did not have jurisdiction over him to approve the filing of a delinquency petition because the hearings were not held within the required time periods and because the court had previously awarded jurisdiction to the DOC. The State argues in part that M.D. has waived his challenge to the juvenile court's jurisdiction because he failed to raise the issue below and only

now challenges it on appeal after his placement was modified to the DOC. It also contends that, waiver notwithstanding, the juvenile court had jurisdiction.

[10] In *K.S. v. State*, the Indiana Supreme Court addressed a juvenile's argument that the juvenile court did not have jurisdiction because the record did not reflect that the juvenile court approved the filing of the original delinquency petition. 849 N.E.2d 538, 542 (Ind. 2006). The Court held that Indiana trial courts possess two kinds of "jurisdiction." *Id.* at 540. Subject matter jurisdiction is the power to hear and determine cases of the general class to which any particular proceeding belongs. *Id.* Personal jurisdiction requires that appropriate process be effected over the parties. *Id.* "Where these two exist, a court's decision may be set aside for legal error only through direct appeal and not through collateral attack." *Id.* The Court observed that "[a]ttorneys and judges alike frequently characterize a claim of procedural error as one of jurisdictional dimension" and that "[t]he fact that a trial court may have erred along the course of adjudicating a dispute does not mean it lacked jurisdiction." *Id.* at 541. The Court held that the juvenile's claim rested on the provisions of the Indiana Code concerning how to initiate a juvenile proceeding. *Id.* at 542. Specifically, the Court observed that Ind. Code § 31-37-10-2 provided that after the filing of a petition alleging that a child is a delinquent child, the juvenile court shall consider the preliminary inquiry and the evidence of probable cause and approve the filing of a petition if there is probable cause to believe that the child is a delinquent child and it is in the best interests of the child or the public that the petition be filed. *Id.* The Court noted that whether or not the juvenile court's approval of

the filing of the petition needed to be explicitly stated in the record is a matter of first impression. *Id.* However, the Court held: "Still, there is no question that the juvenile court had subject matter and personal jurisdiction over this case." *Id.* It observed that a juvenile court indeed has exclusive jurisdiction over a proceeding alleging a child to be a delinquent child. *Id.* (citing Ind. Code § 31-30-1-1). It also observed that "[a]s for personal jurisdiction, K.S. was a Marion County resident who submitted himself to the authority of the court," held that K.S.'s claim of procedural error was untimely, noted that K.S. did not object during the proceedings, and concluded that "K.S.'s collateral attack after being committed to the DOC, characterized as jurisdictional, is not." *Id.* at 542. In light of *K.S.*, we conclude that the juvenile court had jurisdiction and that any claim of procedural error is untimely given M.D.'s lack of an objection before the juvenile court.

## II.

[11] The next issue is whether the juvenile court abused its discretion in awarding wardship of M.D. to the DOC. Without citation to the record, M.D. asserts that his probation was revoked because he was sitting on the porch, which was outside the area permitted by his electronic monitor, he was not attending school thirty hours per week even though he was progressing with earning credits, and he had missed two probation meetings. He argues that his violations of probation, while not acceptable, do not rise to the level of placement in the DOC and that the placement was not the least restrictive. The State points to M.D.'s delinquent behavior, the provision of individualized

services, and M.D.'s violation of his lenient placement, and it argues that the juvenile court did not abuse its discretion.

[12] The choice of the specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court and will only be reversed if there has been an abuse of that discretion. *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008). An abuse of discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual inferences that can be drawn therefrom. *Id.* Hence, the juvenile court is accorded wide latitude and great flexibility in its dealings with juveniles. *Id.*

[13] Ind. Code § 31-37-18-6 provides:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
>> (1) is:
>>
>>> (A) in the least restrictive (most family like) and most appropriate setting available; and
>>>
>>> (B) close to the parents' home, consistent with the best interest and special needs of the child;
>>
>> (2) least interferes with family autonomy;
>>
>> (3) is least disruptive of family life;
>>
>> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

[14] "Under the statute, placement in 'the least restrictive (most family like) and most appropriate setting available' applies only '[i]f consistent with the safety of the community and the best interest of the child.'" *J.D. v. State*, 859 N.E.2d 341, 346 (Ind. 2007) (quoting Ind. Code § 31-37-18-6).

[15] In its order awarding wardship of M.D. to the DOC, the court observed that the following services were provided: "1. Minor placed on Probation Supervision. 2. Case management. 3. Individual therapy. 4. Family therapy. 5. Addictions assessment. 6. Anger Replacement Therapy (ART). 7. Commitment to Juvenile Detention Center (JDC). 8. Work Your Way Out program (WYWO). 9. Placed on electronic monitor. 10. Drug screens. 11. Drug treatment. 12. Victim Offender Reconciliation Program (VORP). 13. Education Program. 14. Attend school and give best efforts. 15. Suspended commitment to IDOC. 16. Body attachment issued. 17. Previous commitment to IDOC. 18. Obtain employment." Appellant's Appendix Volume II at 93-94.

[16] In view of M.D.'s prior history of delinquent behavior and his failure to adequately respond to prior attempts at rehabilitation, the disposition ordered by the juvenile court is consistent with his best interest and the safety of the community. We find no abuse of discretion. *See id.*

## *Conclusion*

[17]    For the foregoing reasons, we affirm the juvenile court's order.

[18]    Affirmed.


Najam, J., and Kirsch, J., concur.