## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 23 2018, 9:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas C. Allen
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| L.D.W., <br> *Appellant-Respondent*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | January 23, 2018 <br><br> Court of Appeals Case No. <br> 02A04-1707-JV-1645 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable Daniel G. Heath, Judge <br><br> The Honorable Michael T. Douglass, Magistrate <br><br> Trial Court Cause No. <br> 02D07-1702-JD-202 |

**Brown, Judge.**

[1] L.D.W. appeals the trial court's dispositional order awarding wardship of him to the Department of Correction (the "DOC") for housing in a correctional facility for children. L.D.W. raises one issue which we revise and restate as whether the court abused its discretion in entering its order. We affirm.

## Facts and Procedural History

[2] On February 22, 2017, Fort Wayne police responded to a report of three individuals, one of whom was L.D.W., born in November 2001, walking down an alley while armed, and officers combed the area looking for the individuals. When the officers identified the three individuals, two of them, including L.D.W., ran west and the other ran east. L.D.W. and the other individual saw a police vehicle and ran, the officer in the vehicle exited the vehicle and chased them, and another officer yelled for them to stop. Another officer saw L.D.W. and the other individual running across an empty lot directly in front of him, ordered them to stop and get on the ground, and noticed that L.D.W. had a gun in his hand. The officer drew his weapon, yelled for the two individuals to stop, and fired a shot. L.D.W. dropped his gun and bent down to pick it up, and the other individual running with L.D.W. ran into L.D.W. and knocked him to the ground. The officer ran toward L.D.W., noticed he could not see L.D.W.'s left hand, pointed his weapon at L.D.W., and ordered him to show his hands. L.D.W. fell onto his back, placed his hands up in front of him, and kicked his leg underneath the front of a car next to where he had fallen, and the officer rolled L.D.W. onto his stomach and placed him in handcuffs. The officer

shined a light under the car where L.D.W. had been kicking and saw what appeared to be a handgun. L.D.W. stated that the weapon was an airsoft gun.

[3] On March 1, 2017, the State filed a petition alleging that L.D.W. was a delinquent child in that he committed an act which, if committed by an adult, would be the crime of resisting law enforcement as a class A misdemeanor. On May 15, 2017, the court issued an Order on Factfinding Hearing which stated that the court had held a factfinding hearing and found that L.D.W. is a delinquent child and committed the delinquent act of resisting law enforcement. The court ordered that L.D.W. be placed in temporary secure detention at the Allen County Juvenile Center (the "ACJC") and that he comply with all rules and participate in educational services, in drug/alcohol group classes, and in the Thinking Errors Program if available.

[4] On June 15, 2017, the court held a dispositional hearing at which it noted that the reports presented to it included an ACJC Court Report, a Pre-Dispositional Report, and a Placement Board Staffing Report. The probation department recommended that L.D.W. be committed to the DOC. His counsel argued that L.D.W. was making progress, had improved his grades, and desired to become a productive member of society. His counsel also stated that, if the court ordered him to the DOC, perhaps that might be suspended and that the least restrictive environment would be to return home under any conditions the court would impose. The court stated "[w]ell, DOC is the last option," "[t]hat's kind of where this is at," "[n]obody wants you to go to the [DOC]," "[b]ut the situation you find yourself in, because of your choices, that you've

acknowledged or said that you know have been poor," and "you run out of options just like we talked about." Transcript at 74, 77. The court also stated "[h]ere's the keys young man, you get to work, put your head down, stay out of trouble, focus on yourself, to better yourself, to make better choices, and you'll be released sooner than later," "[n]ow, if you don't do that, you want to act up like you've been doing here - frankly, I'm not impressed that your disciplinary reports have dropped off after the Fact Finding," and "[w]e shouldn't have any disciplinary reports in the first place, let alone 25. That's ridiculous. You're better than that. You know better than that." *Id.* at 78. The court further stated: "Court will show special findings: Has an extensive history of incorrigible behavior, conduct is chronic, escalating, has an ample opportunity to alter behavior, must learn logical and natural consequences of said behavior, and is in need of rehabilitation and will benefit from a highly structured environment." *Id.* at 80. It awarded wardship of L.D.W. to the DOC for housing in a correctional facility for children.

## *Discussion*

[5] The issue is whether the court abused its discretion in awarding wardship of L.D.W. to the DOC for housing in a correctional facility for children. The juvenile court is given "wide latitude and great flexibility" in determining the specific disposition for a child adjudicated a delinquent. *D.A. v. State*, 967 N.E.2d 59, 65 (Ind. Ct. App. 2012). However, its discretion is circumscribed by Ind. Code § 31-37-18-6, which provides:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1)    is:
>
> > (A)    in the least restrictive (most family like) and most appropriate setting available; and
> >
> > (B)    close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2)    least interferes with family autonomy;
>
> (3)    is least disruptive of family life;
>
> (4)    imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5)    provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

[6]    "Under the statute, placement in 'the least restrictive (most family like) and most appropriate setting available' applies only '[i]f consistent with the safety of the community and the best interest of the child.'" *J.D. v. State*, 859 N.E.2d 341, 346 (Ind. 2007) (quoting Ind. Code § 31-37-18-6).

[7]    A disposition will not be reversed absent a showing of an abuse of the juvenile court's discretion, which occurs when the juvenile court's order is clearly against the logic and effect of the facts and circumstances before the court or the reasonable inferences that can be drawn therefrom. *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010).

[8] L.D.W. asserts the court abused its discretion in placing him at the DOC and that a detention at the ACJC would fulfill the court's finding that he needed to learn the logical and natural consequences of his behavior, and would deprive him of his freedom and the everyday luxury of freedom of movement. He argues the ACJC is as structured as any facility within the DOC and as such fulfills the court's finding for the need of structure. He also argues that his grades improved while he was detained at the ACJC and that his juvenile history is not filled with serious or dangerous criminal behavior.

[9] The State maintains that L.D.W. has a history of delinquent activity, has been offered services, and has had multiple opportunities to rehabilitate. It argues the DOC is the least restrictive option available based on L.D.W.'s history and failed attempts at rehabilitation, L.D.W. has already been "given the exact treatment/opportunity that he is arguing for, detention at the [ACJC]," and that he committed the instant offense less than two months after being released from the ACJC. Appellee's Brief at 10.

[10] The ACJC Court Report, dated June 1, 2017, states that, since his last court date, L.D.W. had received three incident reports, that he was making progress and was more compliant with ACJC staff, and that he had made significant improvement in controlling his behavior. The report also included a summary of L.D.W.'s medical status and his academic status. The Placement Board Staffing Report, dated June 12, 2017, indicates that each of five representatives recommended that L.D.W. be placed in the DOC, and the representatives listed multiple reasons in support of their recommendation. These included L.D.W.'s

extensive history in the juvenile system, that he has been on all levels of probation, that his behavior in detention has been horrible and he has had over twenty disciplinary referrals, that he has been suspended from school, that numerous services had been offered, and that he tested positive for marijuana.

[11] The pre-dispositional report, dated June 14, 2017, indicates that L.D.W.'s legal history includes battery resulting in bodily injury in 2011, conversion in 2013, public intoxication in 2015, and possession of marijuana in 2016. The report indicates L.D.W. has been subject to informal administrative probation, informal operational probation, two periods of formal operational probation, three periods of electronic monitoring, and two periods of confinement at the ACJC, the first from May 5, 2016, through August 2, 2016, when he was released on anklet supervision, and the second from October 25, 2016, through January 4, 2017.

[12] The pre-dispositional report further provides L.D.W. has "displayed significant behavioral issues while detained at the ACJC. He has received 24 disciplinary referrals for contraband and failing to follow staff instructions including: arguing, profanity, talking during resident movement, provoking, instigating, or participating in an altercation, resident body posture during resident movement, verbal harassment, excessive noise, and horseplay." Appellant's Appendix Volume 2 at 73. With respect to L.D.W.'s education, the report states that he began attending class at the ACJC in February 2017 and earned a grade of B+ in Algebra I and an F in English 9. It states that he struggled with attendance once he returned to South Side High School in January 2017 as evidenced by

four full-day truancies, sixteen class truancies, and twenty-two class tardies and that he was suspended on three separate occasions. With respect to L.D.W.'s health information, the report states that he was previously diagnosed with attention deficit hyperactivity disorder and tested positive for cannabinoid by urinalysis on February 23, 2017. The report also indicates that his overall risk assessment score using the Indiana Youth Assessment System places him in the high risk to reoffend category. With respect to his ACJC confinement, the report states that he had been given ample opportunities to alter his delinquent behaviors but refused to comply and that he could benefit from the structure and supervision provided at the DOC. The pre-dispositional report also indicates that L.D.W.'s case was staffed at Placement Board and it was a unanimous recommendation that he be committed to the DOC.

[13] At the dispositional hearing, the probation department recommended that L.D.W. be committed to the DOC and noted his lengthy history of non-compliance and unsuccessful completions on supervision. The department noted that L.D.W. had been confined to the ACJC two separate times, that he was released from the more recent confinement on January 4, 2017, and that he committed his most recent offense less than two months later. Indeed, the pre-dispositional report indicates that L.D.W. was released from the ACJC on January 4, 2017, and he committed the new offense of resisting law enforcement on February 22, 2017. In its dispositional order, the court awarded wardship of L.D.W. to the DOC and found that he has an extensive history of incorrigible behavior, that his conduct is chronic and escalating, that

he has had ample opportunity to alter his behavior, that he must learn logical and natural consequences of delinquent behavior, and that he is in need of rehabilitation and will benefit from a highly structured environment.

[14] Based upon the record and under the circumstances, we cannot say that the court abused its discretion in awarding wardship of L.D.W. to the DOC for housing in a correctional facility for children. *See D.E. v. State,* 962 N.E.2d 94, 97 (Ind. Ct. App. 2011) (noting the trial court placed the juvenile in a DOC facility because attempts to rehabilitate his behavior were unsuccessful; observing the juvenile had already violated probation by testing positive for marijuana and had been suspended or expelled from multiple schools; and holding that under the circumstances placement in the DOC was not an abuse of discretion).

## *Conclusion*

[15] For the foregoing reasons, we affirm the court's order.

[16] Affirmed.

Baker, J., and Riley, J., concur.