## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 18 2019, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Amy D. Griner
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |
|---|---|
| J.J.,<br>*Appellant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee*. | November 18, 2019<br><br>Court of Appeals Case No.<br>19A-JV-595<br><br>Appeal from the St. Joseph Probate Court<br><br>The Honorable Graham Polando, Magistrate<br><br>The Honorable Jason Cichowicz, Judge<br><br>Trial Court Cause Nos.<br>71J01-1711-JD-407<br>71J01-1901-JD-4 |

**Brown, Judge.**

[1] J.J. appeals his commitment to the Department of Correction (the "DOC"). We affirm.

*Facts and Procedural History*

[2] On December 5, 2017, the State filed a Petition Alleging Delinquency in cause number 71J01-1711-JD-407 ("Cause No. 407") alleging that J.J., who was born in November 2002, committed one act of criminal trespass which would constitute a class A misdemeanor if committed by an adult. On January 12, 2018, the juvenile court held a hearing, J.J. admitted to the allegation, and the court found him to be delinquent and ordered placement in the "House Detention Trust House Program."[1] Appellant's Appendix Volume II at 35. On January 24, 2018, J.J. signed a Home Detention Electronic Monitoring Program Contract, and a chronological case summary ("CCS") entry for February 9, 2018, states that he failed to abide by the program's terms and conditions. *Id.* at 8. Following a status hearing the same day, he was released from secure detention on the Home Detention Electronic Monitoring Program to his mother.

[3] On February 23, 2018, the court held a dispositional hearing, placed J.J. on "Strict and Indefinite Probation," and ordered him to continue to be placed on GPS for up to sixty days, obey all school rules and regulations, and participate in various court-ordered services, including tutoring and community service. *Id.* at

---

[1] The St. Joseph County Home Detention Program webpage indicates that youth are not placed on GPS under the Trust House Arrest program. *See Home Detention Program*, ST. JOSEPH COUNTY, https://www.sjcindiana.com/1334/Home-Detention-Program (last visited November 1, 2019).

59. The court adopted as findings the statements in the probation officer's predispositional report, which indicates that J.J. had two prior incidents: one in 2015 involving "Arrest" and "Theft/MA" that resulted in "Diversion" on June 1, 2016, and a second in 2017 involving "Arrest" and "Curfew Violation/S" that resulted in "LetOfAssis" on July 26, 2017.[2] *Id.* at 50. The report also indicates that J.J.'s mother stated he has accumulated nine out-of-school suspensions during the current school year mostly for attendance-related issues, and is currently "suspended, pending expulsion." *Id.* at 53. A Home Detention Violations and Response Report dated April 13, 2018, indicates that J.J. had a level 3 violation when he left school without permission from Community Corrections.

[4] Later that year, Probation Officer Dayna Carire filed a modification report which stated J.J. had not been in compliance with probation services or "going to school as often as he should." *Id.* at 110. The court held a modification hearing on November 13, 2018, at which Officer Carire testified about certain incidents, including J.J.'s threatening of his pregnant teacher with statements that "on the hood, if you call my mother I'm going to smack you" and "if you call my mother I'm going to knock you out and break your phone." Transcript at 9. Before requesting that J.J. be committed for thirty days, she stated that he showed no progress towards weekly goals, his behavior has continued to escalate, and

---

[2] The Preliminary Inquiry prepared in Cause No. 407 indicates that J.J. "was given a letter offering assistance for a curfew violation in July 2017." Appellant's Appendix Volume II at 25.

probation takes his threats seriously and believes that his behaviors pose a threat to the community. *Id.* at 10. The court indicated that it planned to give J.J. the opportunity to engage in a program and that he "can't just kind of let it slide and think nothing's going happen." *Id.* at 13-14. The court entered an order that continued J.J. on probation, ordered him to submit to a urine drug screen, and committed him for thirty days to the St. Joseph County Juvenile Justice Center, which it suspended, upon full compliance.

[5] Officer Carire filed a December 4, 2018 modification report that indicates probation was informed eight days after J.J. started Keys Academy on November 20, 2018, that he would be attending only half days due to his behavior, and that on November 29, 2018, he refused a staff member's request to log into his school work online and stated he did not feel like it and did not have to. It further referenced J.J.'s horseplay, use of profanity, threats, absences, noncompliance with services, and refusal to follow directions.

[6] On January 11, 2019, the State filed a separate delinquency petition in cause number 71J01-1901-JD-4 ("Cause No. 4") alleging that J.J. committed one act on January 6, 2019, of resisting law enforcement which would constitute a class A misdemeanor if committed by an adult. On January 16, 2019, J.J. admitted to the allegation in Cause No. 4, and the court found him to be delinquent.

[7] On February 13, 2019, the court held a hearing and stated it had reviewed the oral disposition recommendations in Cause No. 4, which indicated that, on January 6, 2019, police officers responded to a dispatch regarding several

juveniles fighting and J.J. "attempted to intervene by trying to push past officers," stated "don't touch me, don't touch me!" when an officer told him to stay back multiple times, and squared up and struggled with the officer before several other officers managed to place him in handcuffs. Appellant's Appendix Volume II at 213. The oral disposition recommendations also stated that J.J. "refused to submit to a UDS on 2/1/2019 and 2/11/2019" and was disruptive and the recommendation was that he be awarded to the DOC's care and custody. *Id.* at 214. Officer Carire testified about an incident in which probation was notified about J.J.'s behavior and he "responded that he does not care and that Probation can't do anything to him." Transcript at 20.

[8] The court issued a modification order in Cause No. 407 and a dispositional order in Cause No. 4 awarding wardship of J.J. to the DOC for housing in any correctional facility or community-based correctional facility for children. The orders stated they were the least restrictive alternative to insure J.J.'s welfare and the safety and welfare of the community and had been entered because: J.J. "has failed to abide by Court ordered terms of probation," "[t]he present offense is serious in nature warranting placement in a secure facility, J.J.'s "past history of delinquent acts, even though less serious, warrants placement in a secure facility," he "continues to engage in substance use," and that "[l]esser restrictive means of controlling the child's behavior have been investigated or tried." Appellant's Appendix Volume II at 146.

## Discussion

[9] The issue is whether the juvenile court abused its discretion in awarding wardship of J.J. to the DOC. He argues that the placement is neither the least restrictive nor in line with the rehabilitative goal of the juvenile justice system; that he never acted upon the comments perceived as threats by his teachers nor was he physically violent in school; and that he completed many of the court's ordered services and was accepted back into the school where the problems were occurring.

[10] The juvenile court is given wide latitude and great flexibility in determining the disposition of a delinquent child. *D.A. v. State*, 967 N.E.2d 59, 65 (Ind. Ct. App. 2012). However, its discretion is circumscribed by Ind. Code § 31-37-18-6, which provides that, "[i]f consistent with the safety of the community and the best interest of the child," the juvenile court shall enter a dispositional decree that is "in the least restrictive (most family like) and most appropriate setting available" and "close to the parents' home, consistent with the best interest and special needs of the child"; least interferes with family autonomy; is least disruptive of family life; imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and provides a reasonable opportunity for participation by the child's parent, guardian, or custodian. Under the statute, placement in the least restrictive and most appropriate setting available applies only "[i]f consistent with the safety of the community and the best interest of the child." *J.D. v. State*, 859 N.E.2d 341, 346 (Ind. 2007) (citing Ind. Code § 31-37-18-6). We will not overturn the juvenile court's disposition

order absent an abuse of discretion, which occurs if its actions are clearly against the logic and effect of the facts and circumstances before it or the reasonable inferences that may be drawn therefrom. *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010).

[11] J.J. was offered the opportunity to conform his behavior to an acceptable standard while on probation and was unable to do so for even a relatively short period of time. The juvenile court heard testimony from his probation officer and was able to consider the filed modification reports. It received evidence regarding his behavior in school and participation in and reasons for failure and dismissal from various court-ordered services. While he contends that he is not a danger, we note that J.J. committed the act in Cause No. 4 while on probation, and the court found it to be serious in nature and warrant placement in a secure facility. The court reviewed J.J.'s history of lesser restrictive placements and found such options inappropriate. Based upon the record, we find no abuse of discretion. *See K.A. v. State*, 775 N.E.2d 382, 387 (Ind. Ct. App. 2002) (holding the juvenile court did not abuse its discretion in placing K.A. at the DOC where previous less restrictive placements were unsuccessful and continued placement at a residential treatment center was apparently no longer an available option), *trans. denied*.

[12] For the foregoing reasons, we affirm the juvenile court.

[13] Affirmed.

Altice, J., and Tavitas, J., concur.