## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 29 2020, 8:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michelle Laux
St. Joseph County Public Defender's Office
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

P.K.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

September 29, 2020

Court of Appeals Case No. 20A-JV-896

Appeal from the St. Joseph Probate Court

The Honorable Jason Cichowicz, Judge

Trial Court Cause Nos.
71J01-1708-JD-260
71J01-1904-JD-147

**Brown, Judge.**

[1] P.K. appeals his commitment to the Department of Correction (the "DOC"). We affirm.

## Facts and Procedural History

[2] On August 9, 2017, P.K. knowingly or intentionally assisted another person in taking a vehicle without the owner's permission and assisted another person with taking property from a residence with the intent to deprive the owner of the use of the property. On August 15, 2017, the juvenile court authorized the filing of delinquency petitions against P.K., who was born in 2003, in cause numbers 71J01-1705-JD-152 ("Cause No. 152") and 71J01-1708-JD-260 ("Cause No. 260"). The State's petition in Cause No. 152 alleged that, on February 7, 2017, P.K. aided, induced, or caused burglary, a level 5 felony if committed by an adult, and the petition in Cause No. 260 alleged that he aided, induced, or caused auto theft, a level 6 felony if committed by an adult, and aided, induced, or caused theft, a class A misdemeanor if committed by an adult.[1] On August 25, 2017, the court held a hearing at which, pursuant to a prosecutor's admission agreement, P.K. admitted to the allegations in Cause No. 260, and the court adjudicated him a delinquent child, dismissed Cause

---

[1] A probation officer's report of preliminary inquiry filed on August 14, 2017, indicates that P.K. had been placed in informal adjustment for the burglary offense when "there were [] new alleged offense[s] committed violating that agreement"; namely, the alleged offenses committed on August 9, 2017. Appellant's Appendix Volume II at 33. **(8 (CCS); 29)**

No. 152, and "ha[d] [him] remain on the home detention program."[2] Transcript at 11.

[3] On October 20, 2017, the court held a dispositional hearing at which it adopted recommendations appearing in the pre-dispositional report, noted that P.K. had finished electronic home monitoring, and directly addressed him stating: "Substance abuse treatment, medication compliance, case management services, you know, those are very specific to you." *Id.* at 18. That same day, the court issued a dispositional order that P.K. be placed on strict and indefinite probation and that he abstain from the use and/or possession of any illegal substances; submit to mandatory drug screens; participate in a prosocial activity; continue with participation and completion of Substance Abuse Treatment as previously ordered; and remain medication compliant.

[4] Later the same year, Probation Officer Samantha Simpson submitted a modification report which stated P.K. tested positive for marijuana on November 1 and November 15, 2017, and that he had not been honest about his use.[3] On December 5, 2017, the court held a hearing at which Officer Simpson indicated P.K. tested positive for marijuana on December 1st and that he "had said that he had not used and it was maybe 0.6 points lower than the

---

[2] The preliminary inquiry report indicates that P.K. had been allowed previously to remain within the home in the community while being supervised by the Probation Department on informal adjustment.

[3] The modification report stated: "He indicated during an appointment on 11/15/17, that he had not used since his last drug screen on 11/1/17. However, [P.K.'s] positive drug screen on 11/15/17 was maxed out at 200.0, indicating that he has not abstained since his last positive drug screen." Appellant's Appendix Volume II at 63.

screen two weeks prior. So, there's been no proof that he's abstaining; he's actually continuing using between his drug screens, which is very concerning." *Id.* at 22. The court entered an order which adopted the statements in the modification report as findings and ordered P.K. to a suspended thirty day commitment to the Juvenile Justice Center, provided that his "levels decrease and he continues to abstain from the use of all illegal substances" and that he continue on probation and "abide by all prior terms imposed." Appellant's Appendix Volume II at 66.

[5] In early January 2018, Probation Officer Jill Wiese submitted a modification report which stated P.K. tested positive for marijuana on December 13 and 28, 2017, and January 3, 2018, and that he had been detained on January 3, 2018, for a violation of home detention.[4] On January 5, 2018, after holding a hearing at which it vacated the requirement for participation, skilled training, and case management at Oaklawn "as the family reportedly remains on a waiting list with no services having been provided at this point," Transcript at 30, the court entered an order which adopted the statements in the modification report as findings and ordered that P.K. serve five days of the previously suspended commitment at the Juvenile Justice Center. The order also continued P.K.'s probation and ordered that he was to abide by all prior terms, be placed on home detention following his release from the Juvenile Justice Center, and

---

[4] According to the modification report, the December 28th drug screen resulted in "a level of 200.0," which indicated "new/continued use of illegal substances," and the January 3rd drug screen completed upon intake into detention also resulted in "a level of 200.0." Appellant's Appendix Volume II at 67.

"participate in home-based case management with [a] DCS approved provider." Appellant's Appendix Volume II at 73.

[6] A monthly progress report from Keys Counseling for home-based casework face-to-face services in January 2018 states: "Slow progress has been made since the client is disengaged and non[-]compliant." *Id.* at 92. A Probation Status Report dated January 25, 2018, advised: P.K. was placed on home detention and GPS monitoring on January 7, 2018; the probation department received notification that P.K. had removed his ankle monitor at approximately 3:15 p.m. on January 25, 2018; and that he failed to return home from school. A modification report prepared by Officer Wiese on January 26, 2018, stated that, on January 25th, P.K. "removed the GPS monitor and got into a vehicle and left school grounds instead of getting on the bus and going home." *Id.* at 77. The report further indicated P.K. was non-compliant, "refused to get out of bed or come out of his room on January 24, 2018," and that on January 25, 2018, he eventually left the bed, but refused to engage in services. *Id.* at 79. On January 26, 2018, the court issued a body attachment order and held a hearing at which Officer Wiese indicated that P.K. had "previously been involved in therapy through Oaklawn and also medication management I believe," which were "offered . . . in the community," P.K. had been involved with Oaklawn "even prior to being involved with probation," and the services were

"something that have been ongoing."[5]  Transcript at 41.  The court entered an order on February 16, 2018, which adopted the statements in the modification report as findings, continued P.K.'s probation, and ordered that he abide by all prior terms and "participate and successfully complete placement and follow all rules and regulations" at White's Residential-Intensive Substance Abuse Program in Wabash, Indiana.  Appellant's Appendix Volume II at 90.

[7]  A monthly progress report from White's Residential and Family Services for February 2018 states that P.K. had been previously diagnosed with Oppositional Defiant Disorder, Adjustment Disorder with Mixed Disturbance of Emotions and Conduct, and Attention Deficit Hyperactivity Disorder.  On August 20, 2018, the probation department filed a petition for modification which stated that P.K. was one week away from completing the residential treatment program at White's Residential and Family Services and that "a step down to Prairie View . . . would be an ideal situation."  *Id.* at 29.  On August 21, 2018, the court issued a review hearing order that continued P.K. on probation and ordered his mother to submit to a drug screen to determine whether he was to be released on August 30, 2018, to her custody or was to "step down to" the Prairie View Group Home.  *Id.* at 32.

---

[5] Officer Wiese's January 26, 2018 modification report indicated that P.K. began the present Oaklawn services in June, his progress since August had been slow, that he had been less willing to participate in sessions, from October 31, 2017 until January 2, 2018, he did not show or cancelled every appointment, and that he had resumed attending since January 2, 2018, and appeared to be engaging in services again.

[8] On October 30, 2018, the court issued an order authorizing P.K.'s detention. A Probation Status Report dated the same day advised that P.K. had not been located since 4:30 p.m. of the previous day. Probation Officer Justin Minder submitted a modification report which stated that law enforcement had discovered P.K. intoxicated three days earlier at the scene of an alleged party, transported him to a hospital, and administered a portable breathalyzer test, which resulted in a reading of .095. The report also indicated that on October 30th, P.K.'s mother informed the probation department of his absence. On November 9, 2018, after a hearing, the court entered an order which adopted the statements in the modification report as findings, continued P.K.'s probation, and ordered that he was to abide by all prior terms and be placed on home detention and GPS monitoring for a period of up to ninety days. On November 16, 2018, the court issued a status hearing order which found P.K. had "failed to fully comply with all detention rules and requirements while awaiting release on the Home Detention Program" and ordered he remain in secure detention "until attaining level three," at which time he would be released on home detention for a period of up to ninety days. *Id.* at 47.

[9] In February 2019, P.K. removed his GPS tracking monitor from his ankle and left the house without permission, and the court issued a body attachment order that found P.K. had absconded from Home Detention GPS.[6] According to a

---

[6] A Home Detention Violations and Response Report dated February 20, 2019, states that Home Detention staff received an alert at approximately 9:04 p.m. of that date which indicated P.K. had removed his GPS ankle monitor and that his mother had confirmed P.K. was not home and located his band in the front yard.

preliminary inquiry report prepared by Probation Officer Stacey Poynter in April, P.K.'s whereabouts were unknown and P.K.'s mother, who was able to locate the ankle monitor in the front yard of the home along with a pair of scissors, believed that P.K. "ran away because he may have had a positive result on a drug test earlier that evening" and advised that he took all of his clothes with him. *Id.* at 50.

[10] On May 2, 2019, the juvenile court authorized the filing of delinquency petitions in cause numbers 71J01-1904-JD-147 ("Cause No. 147") and 71J01-1904-JD-148 ("Cause No. 148"). The petition in Cause No. 147 alleged that P.K. committed escape, a level 6 felony if committed by an adult, and the petition in Cause No. 148 alleged that he touched another individual in a rude, insolent, or angry manner resulting in battery, a class B misdemeanor if committed by an adult.[7]

[11] On May 15, 2019, the court held a bench warrant review hearing in Cause No. 260 and ordered P.K. held in secure detention at the Juvenile Justice Center. A hearing information form submitted to the court the previous day indicated that P.K. had been detained on May 13, 2019, pursuant to the February 21, 2019

---

[7] Officer Poynter's April 2019 report of preliminary inquiry indicates that a police officer was dispatched on November 2, 2018, regarding an assault that had taken place at the Juvenile Justice Center where P.K. was a resident. According to the report, a staff member stated that P.K. had been among a group of juveniles who were teasing another individual, P.K. did not stop when told to by the staff member, and when the staff member walked to escort P.K. to his room, P.K. "reached around [the staff member's] arm and slapped [the individual who had been teased] on the right side of his face." Appellant's Appendix Volume III at 57.

body attachment order, and a modification report submitted by Officer Wiese indicated that, at the time he was detained, P.K. tested positive for marijuana.

[12] On June 11, 2019, the juvenile court held a hearing at which P.K. admitted to the allegation in Cause No. 147, and the court adjudicated him a delinquent child, dismissed Cause No. 148, and set a modification hearing in Cause No. 260 and a dispositional hearing in Cause 147 for the same day. At the July 23, 2019 hearing, the probation department requested placement in the DOC and indicated that it was concerned that if P.K was "placed on a monitor, the good chance is he will run again." Transcript at 74. Following P.K.'s request for "one more opportunity" and statements by him and his mother, the court stated:

> Well [P.K.], you've put the Court in a very tough spot, because sending you home seems far to[o] light . . . . You have been given many, many, many opportunities and you have failed them pretty darn quickly. The GPS monitor might be helpful, but you cut that off. Placement would be nice, but you failed there. So I'm left with the choice of ordering you committed to the Department of Correction, which, if you're serious about all these things, would be a shame, or letting you go home, which I've already said is too light. I don't know what to do.
>
> They are saying, again, with more than a little justification, that I shouldn't believe these things. And as you can imagine, I hear quite a few folks who are sitting where you are who say they've turned a corner, and it's not very long before they come back. I have to figure out where you are going to be.

*Id.* at 75, 77. The court issued an order of modification in Cause No. 260, which continued P.K. on probation and ordered that he abide by all prior terms and be released on the home detention GPS electronic monitoring program, and it issued an dispositional order in Cause No. 147 that placed P.K. on strict and indefinite probation and ordered he fully comply with all terms and conditions of probation in Cause No. 260.

[13] On November 27, 2019, Officer Wiese submitted a status report which stated that P.K. had remained on GPS monitor with no known violations and was stepped down to Trust House Arrest on September 25, 2019, where he had no known violations. The status report also recommended that he be released from home detention, and on December 2, 2019, the court set a modification hearing for December 10, 2019. A Home Detention Violations and Response Report dated December 2, 2019, indicates P.K. submitted to a urinalysis on November 27, 2019, and tested positive for marijuana. A modification report prepared by Officer Wiese states a December 4, 2019 drug screen was also positive for marijuana and that Keys Counseling had notified the probation department on December 9, 2019, he had not been participating in case management services for two weeks. When P.K. did not appear at the December 10, 2019 hearing, the court issued body attachment orders in Cause Nos. 147 and 260, and he was detained on February 27, 2020.

[14] On March 16, 2020, the juvenile court authorized the filing of a delinquency petition in cause number 71J01-2003-JD-82 ("Cause No. 82"), which alleged he committed domestic battery, a class A misdemeanor if committed by an adult,

and criminal mischief, a class B misdemeanor if committed by an adult.[8] The court held a hearing on March 24, 2020, at which P.K. admitted to violating probation as alleged in petitions for modification in Cause Nos. 260 and 147.[9] The court noted P.K. was asking for "one last chance to do the right thing," which "sound[ed] familiar" because "[t]hat's what [P.K.] said last July," he had been given many chances, and that "there's really no indicat[ion] that [P.K.] would take advantage" of any additional chances. *Id.* at 90-91. The court dismissed Cause No. 82, adopted the recommendations of the probation department, and issued modification orders in Cause Nos. 260 and 147 awarding wardship to the DOC for housing in any correctional facility or any community-based correctional facility for children. The order states it is the least restrictive alternative to insure P.K.'s welfare and rehabilitation and the safety and welfare of the community and had been entered because: P.K. had "yet again failed to abide by the terms of his probation"; the court had rejected the probation department's recommendation the previous summer that he be committed to the DOC and granted P.K.'s request for one more chance; since that time, he had violated the terms of his probation and absconded for a

---

[8] According to a police department report filed concurrently with a preliminary inquiry prepared on February 27, 2020, P.K. had been involved in an altercation on February 1, 2020, with his girlfriend when he "pushed her and at one point put his left hand around her neck." Appellant's Appendix Volume III at 117. According to the report, P.K.'s girlfriend advised officers she was pregnant with P.K.'s child, "which he knows," he punched a phone in her hand after she had told him she was going to call the police and the phone struck her upper left leg, and that he has since threatened to have other girls beat her up. *Id.*

[9] Specifically, P.K. admitted that he failed a drug test for marijuana use, tested positive when he returned to the detention center in February, did not appear in December despite the term of probation requiring him to do so, and had no contact with probation or the court until February.

lengthy period; he continued to engage in substance abuse which places his physical and mental health in danger; and less restrictive means of controlling his behavior had been investigated and tried. Appellant's Appendix Volume II at 10.

## *Discussion*

[15] The issue is whether the juvenile court abused its discretion in awarding wardship of P.K. to the DOC. P.K. argues the placement is punitive instead of rehabilitative, not close to the juvenile's family or home, and neither the least restrictive placement nor the most appropriate setting available. He further contends the court never ordered any services to address his mental health issues and that the record is replete with instances of him being "brought back into court due to violations but no Mental Health treatment." Appellant's Brief at 26.

[16] The State maintains that the court correctly observed at the March 2020 hearing that P.K. had been given many opportunities to succeed which he squandered by continuing to consume illegal substances and flout the rules of his probation. It contends that, to the extent that P.K. has proposed the existence of a nexus between mental illness and the delinquent acts, the nexus is speculative. It argues he has failed to show how mental health treatment and substance abuse treatment are mutually exclusive.

[17] The juvenile court is given wide latitude and great flexibility in determining the disposition of a delinquent child. *D.A. v. State*, 967 N.E.2d 59, 65 (Ind. Ct.

App. 2012). However, its discretion is circumscribed by Ind. Code § 31-37-18-6, which provides that, "[i]f consistent with the safety of the community and the best interest of the child," the juvenile court shall enter a dispositional decree that is "in the least restrictive (most family like) and most appropriate setting available" and "close to the parents' home, consistent with the best interest and special needs of the child"; least interferes with family autonomy; is least disruptive of family life; imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and provides a reasonable opportunity for participation by the child's parent, guardian, or custodian. Under the statute, placement in the least restrictive and most appropriate setting available applies only "[i]f consistent with the safety of the community and the best interest of the child." *J.D. v. State*, 859 N.E.2d 341, 346 (Ind. 2007) (citing Ind. Code § 31-37-18-6). We will not overturn the juvenile court's disposition order absent an abuse of discretion, which occurs if its actions are clearly against the logic and effect of the facts and circumstances before it or the reasonable inferences that may be drawn therefrom. *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010).

[18] P.K. was offered the opportunity to conform his behavior to an acceptable standard and his behavior over the course of probation – despite being offered services including cognitive behavioral therapy, dialectical behavioral therapy, and motivational interviewing – demonstrated that he was unable to progress in reforming or maintain progress for even a relatively short period of time. The juvenile court heard testimony from his probation officers and was able to

consider the filed modification reports. Keys Counseling reported progress was slow because P.K. was "disengaged and non[-]compliant." Appellant's Appendix Volume II at 92. From the first dispositional order in 2017, the court ordered P.K. to abstain from the use and possession of illegal substances, participate and complete substance abuse treatment, and remain medication compliant – terms of probation which it then incorporated into future orders. P.K. has been continued on probation several times and has violated the terms of probation several times. At least twice previously, he was placed on home detention but removed his monitoring device and absconded. The court reviewed the lengthy history of lesser restrictive placements, which included the Juvenile Justice Center and White's Residential-Intensive Substance Abuse Program, and found such options inappropriate. Based upon the record and under the circumstances, we conclude that the court's ordered placement is consistent with his best interests and the safety of the community and find no abuse of discretion. *See K.A. v. State*, 775 N.E.2d 382, 387 (Ind. Ct. App. 2002) (holding the juvenile court did not abuse its discretion in placing K.A. at the DOC where previous less restrictive placements were unsuccessful), *trans. denied sub nom. Almay v. State*, 783 N.E.2d 704 (Ind. 2002).

[19] Affirmed.

Robb, J., and Crone, J., concur.